### 5335. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY *v.* ELLIS.

1. The court did not err in allowing an amendment which merely amplified the statement of the plaintiff's cause of action. The petition charged that the death of the plaintiff's husband was due to electricity which came into contact with his person on account of the negligence of the defendant in not removing certain wires; and if this charge was true, the defendant would be liable, whether the electricity was conveyed directly by the wires, or was conveyed by them indirectly through the post or pillar, as alleged in the amendment.
2. A telephone company can not, by ceasing to use a part of its line and disconnecting that part from the part which continues in use, relieve itself from the duty of exercising care to prevent injury to others from the part which is no longer in use.
3. The court properly instructed the jury upon the subject of the notice requisite to charge the defendant with liability for the dangerous condition of its wires.
4. It was an issue of fact whether the plaintiff's husband knew of the dangerous condition of the defendant's wires, and could have avoided the injury to himself by the exercise of ordinary care; the trial judge accurately and fairly submitted this issue to the jury. The right of the plaintiff to recover was to be tested by the conduct of her husband at the time of his alleged homicide, keeping in view his knowledge, or lack of knowledge, of the condition of the wires. But the duty of informing the defendant of the condition of its wires did not rest upon him, and the liability of the defendant was to be tested by ascertaining

See footnote on page 817, ante.

whether its employees, at the time of the alleged homicide, were using that ordinary care and diligence which a prudent man would use under similar circumstances.

5. The charge of the court was not, for any of the reasons assigned, erroneous. The requests for instructions, so far as pertinent, are fully covered in the charge given. The evidence authorized the verdict, and there was no error in refusing a new trial.

DECIDED FEBRUARY 4, 1914.

Action for damages; from city court of Macon—Judge Hodges. October 28, 1913.

The petition alleged, that the telephone company placed a telephone in the house in which the plaintiff and her husband resided, and strung wires to the residence in order to make connection with the main office of the telephone company, and that it afterwards removed the telephone from the house, but the wires connecting with the house were not removed; that the telephone company allowed one of the wires connected with the house to become loose and fall upon the ground near the house; that, about a block from the house, this wire crossed a wire of the Macon Railway & Light Company and came in contact with it, and the insulation of both wires was burned or worn away, and the light company's wire charged the telephone-wire with a dangerous charge of electricity; that the plaintiff's husband went into the front yard of the house at night, not knowing that this wire was in the yard or was dangerous, and came in contact with it, and was killed by the electricity; that the wire had been lying on the ground for about five weeks before his death; that the telephone company was negligent in allowing the wire to become loose and fall on the ground, in allowing it to come in contact with the highly charged wire of the light company, in allowing it to remain in contact with the wire of the light company for five or six weeks, in stringing it in dangerous proximity to the wire of the light company, in allowing the insulation on it to become worn at the point of contact with the light company's wire and at the point where the plaintiff's husband came in contact with it, and in allowing such a dangerous instrumentality near the house without giving notice to him or to any one else in the neighborhood. By amendment the plaintiff alleged that her husband was killed by electricity contained in the wires of the telephone company which were in her yard, in the alley adjoining the yard, and which were attached to her house, that the said wires charged the post or pillar of her house with electricity, and that

electricity from said post or pillar killed him. The defendant objected to the amendment, on the ground that it set out a new and distinct cause of action.

The instructions referred to in the third headnote were as follows:

"The plaintiff contends that the defendant was negligent in failing to move certain wires which were from time to time charged with a dangerous current of electricity. Now, the defendant would only be liable for failing to remove such wires in the event you should find such defendant was charged, under the evidence, with notice or knowledge of the dangerous condition of such wires, by reason of the time that elapsed from their existence.

"If you believe, from a consideration of the evidence, that the wires of the telephone company were from time to time charged with a dangerous current of electricity, it matters not from what source, and that that condition existed for a length of time, for such length of time as ordinary care and diligence required the defendant company to know of its existence, and the defendant company failed to remedy that condition, then it is for you to say whether or not the defendant company, acting through its agents, servants, and employees, exercised ordinary care and diligence."

*Hardeman, Jones, Park & Johnston,* for plaintiff in error.
*Napier, Maynard & Plunkett,* contra.

RUSSELL, C. J. Annie Ellis, the widow of Charlie Ellis, brought an action against the Southern Bell Telephone & Telegraph Company and the Macon Railway & Light Company, to recover damages for the tortious homicide of her husband. At the June term, 1913, a nonsuit was ordered as to the Macon Railway & Light Company, and a verdict for $1,000 was returned against the telephone company. No exception was taken to the judgment awarding the nonsuit. A new trial was granted, upon motion of the plaintiff, against the telephone company. During the second trial, which is now under review, the telephone company vouched the Macon Railway & Light Company in the suit, by the usual notice, calling upon the latter corporation to come in and defend. The plaintiff having elected not to except to the order of nonsuit as to the railway and light company, the case proceeded to trial against the telephone company alone, and the trial resulted in a verdict in favor of the plaintiff for $4,747. In the course of the trial the

plaintiff amended her petition, over objection of the defendant, and exceptions are taken to the allowance of this amendment, and to the refusal of the defendant's motion for a new trial.

1. In the first paragraph of the plaintiff's petition she alleged, that "on the 31st of October, 1912, Charlie Ellis went out into his front yard, not knowing that said wire was in his yard or that said wire was dangerous, came in contact with said wire, and, said wire being dangerous and highly charged with electricity, he was then and there killed by said electricity." The amendment to which objection was made consisted in the addition of the allegation that "Charlie Ellis was killed by the electricity which was contained in the wires of said defendant company which were in plaintiff's yard, in the alley adjoining plaintiff's yard, and which were attached to the plaintiff's house, and that said wires charged the post or pillar of plaintiff's house with electricity, and that the electricity from said post or pillar killed the said Charlie Ellis." There was no error in the allowance of the amendment. Even if the amendment could be considered to be more than a mere amplification of the allegations of the 15th paragraph of the original petition, still the amendment was allowable after evidence had been introduced which authorized the inference that Ellis's death was due to electricity conveyed to his premises by wires of the defendant company, which in the exercise of ordinary care and diligence they should have removed when they took out his telephone. The circumstances were such as perhaps to leave it uncertain whether the deceased came in personal contact with the wires themselves or with the pillar of the house which had been charged with electricity by means of the wires, although it was certain that contact with one or the other caused his death; and since in either event the electricity was communicated by the wires originally mentioned in the petition, it was allowable to allege both that his death was caused by direct contact with the wire and that his death was caused by the electricity therein communicated to his body through the medium of a pillar or post.

2-4. In our opinion the evidence was sufficient to show that the death of the plaintiff's husband was due to electricity conveyed by the defendant's wires, and that the failure of the defendant to remove these wires was such negligence as charged the defendant with liability for any probable result occasioned by this negligence.

Certainly it would not do to hold that if (on account of the failure of the telephone company to perform its duty of inspection) the line of wire used in making the connection between a customer's telephone and the central station of the telephone company were brought in contact with another company's wires, charged with electricity of such powerful voltage as to be dangerous to life, the telephone company would not be liable for any injury resulting from the failure to inspect, if the jury found the neglect of the duty of inspection to be negligence. A telephone company using wires upon poles as a means of communication owes its patrons and the public the duty to so maintain its lines of communication as not to endanger their safety, lives, or property. We do not understand that counsel for plaintiff in error insist to the contrary, but it is contended that since Ellis had his telephone removed, and the contractual relation theretofore existing between him and the telephone company had terminated, there remained no duty on the part of the telephone company as to him, and that the failure to remove the wires which had previously afforded the connection between his house and the central station of the company was not negligence as related to him; that the wire was left on the poles and was permitted to remain attached to his house at his own request, and that the wire was disconnected from the main line by being cut, and was thus also disconnected at his house. It is undoubtedly true, as insisted, that if, in disconnecting a patron, the telephone company does whatever may be necessary to remove the dangers from electricity, attendant upon the use of the wires, it would not be liable for an injury to one who was not its patron. However, it is equally true that if it negligently endangers any member of the public, and by this negligence injury results to him, the telephone company would be liable without regard to whether the person injured was a patron or had ever been. So that it is not necessary to consider whether Ellis had previously had a telephone or whether there was a likelihood of his obtaining service from the company in the future. The company left the wires (according to the evidence for the plaintiff) dissevered, it is true, from any line then in use, but attached to Ellis's house and in a position of close proximity to certain wires of the Macon Railway & Light Company, highly charged with electricity, which probably would produce the death of any human being coming in contact

therewith. The jury were authorized to find that the telephone company was chargeable with the knowledge of this condition; and it matters not whether these wires which it left at the house were in use by it or not. It was the duty of the telephone company to see to it that any danger therefrom, ascertainable by ordinary prudent inspection was prevented. It would never do to hold that the discontinuance of a certain part of a line would relieve the telephone company from the duty of seeing to it that the wires were not in a condition in which they would endanger any member of the public. To hold this would be to license a nuisance. The telephone company owed Ellis, as a member of the public, the duty of not maintaining an instrumentality which might kill him, and just as much owed him the duty of preventing an instrumentality ordinarily harmless from being affected by causes which would render the instrumentality dangerous if, by performance of its duty, the danger might have been obviated. The evidence for the plaintiff showed that the disconnected line of wire came in contact with the highly charged wires of the Macon Railway & Light Company, and had done so several times before the death of the plaintiff's husband. The jury were authorized to find from this that the telephone company had knowledge of the dangerous proximity and contact of this wire with that of the Macon Railway & Light Company. Some wires of the telephone company, detached from the poles, were lying in the plaintiff's yard and in the alley adjoining the yard. The fact that the wires were cut at another place on the defendant's poles, some distance away from the plaintiff's house, increased the danger to the plaintiff's husband, because, if they had not been cut at that point, the contact with wires so heavily charged as were those of the Macon Railway & Light Company would have been discernible at the central station, and if the effect there had been serious, it would have called for immediate attention of the company. Under the evidence the jury were authorized to find that the telephone company, having abandoned this disconnected fragment of its line, so far as care and supervision were concerned, was wholly negligent in not inspecting or repairing it in consideration for the safety of others.

Much stress is laid on the probability that the plaintiff's husband knew or ought to have known that the wire was in his yard and in close proximity to or in contact with his veranda porch. There

is no evidence that the plaintiff's husband knew that the disconnected wire was in the alley near his house or in contact with the post, and nothing to indicate that he had reason to suspect that such was the case. From the fact that he was a railroad porter whose time was spent for a large part away from home, the jury had the right to infer the contrary to what is insisted by the plaintiff in error to be the fact as to this point. But even if the plaintiff's husband knew that the wire was disconnected, he was in no sense an agent of the defendant company, and he did not owe the company the duty of notifying them that the wires had become detached, and consequently the jury not improperly found that the omission on his part to notify the company was not negligence. The duty of avoiding danger, if known to him, rested upon him, but there is no evidence which compels the conclusion that he knew of the danger.

5. The amendment to the motion for a new trial contains nineteen exceptions to the charge of the court and one exception to the refusal of the court to give an instruction requested in writing. As to the latter, it is sufficient to say that the request was, so far as material, covered by the charge given by the court. None of the exceptions to the charge are meritorious. It was both a full and a fair exposition of the law governing the case. The judge (evidently bearing in mind the decisions in the cases of *Southern Bell Tel. Co.* v. *Davis,* 12 *Ga. App.* 28 (76 S. E. 786), *Atlanta Telephone Co.* v. *Cheshire,* 12 *Ga. App.* 652 (78 S. E. 53), and *Southern Bell Tel. Co.* v. *Howell,* 124 *Ga.* 1050 (53 S. E. 577, 4 Ann. Cas. 707), and recognizing that in order to entitle the plaintiff to recover, it would have to be shown that the deceased exercised ordinary care and diligence for his own safety) was very guarded in his language, and told the jury more than once that if it appeared from the evidence that both the deceased and the defendant company were lacking in the exercise of ordinary care and diligence, there could be no recovery. The jury were also specifically instructed that the plaintiff, if entitled to recover at all, was confined to the allegations of negligence in her petition; that only upon proof of these grounds, and upon none other, could she legally recover; and that she could not recover unless due care and caution were shown to have been exercised by the deceased. We are unable to see that an opinion as to what had or had not been proved was

expressed or even intimated in the charge of the court, in any of
the excerpts to which exception is taken on this ground. Taking
the charge of the court as a whole, we do not think the plaintiff
in error could have reasonably asked a court for a fuller and fairer
charge than that given.

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Pottle, J., dissents.*